## ESCHENBACH v. MILLER SAW TRIMMER CO.

Circuit Court of Appeals, Third Circuit.
December 16, 1927.

Rehearing Denied January 31, 1928.

No. 3655.

1. Patents ⟨⟩312(2)—Testimony interpreting one of art's terms held admissible, over objection that scope of prior patent and state of art must be determined from face of prior patents.

In suit for infringement of patent for drier for printing presses, testimony by worker in art to effect that heater of prior patent in actual operation by its owner was positioned directly over pile of printed sheets, and was used in that place before patent in suit was applied for to show scope of prior patent and state of prior art, where prior patentee had placed his heater above what he called delivery mechanism without saying what that term embraced, *held* admissible, since testimony by workers in art as to meaning of art's instrumentalities is admissible.

2. Patents ⟨⟩328—No. 1,468,289, claims 1, 2, for drier for printing presses, held invalid.

Patent No. 1,468,289, issued September 18, 1923, to A. J. Eschenbach, for drier for printing presses, claims 1 and 2, *held* invalid.

Appeal from the District Court of the United States for the Western District of Pennsylvania; Robert M. Gibson, Judge.

Patent infringement suit by Anthony J. Eschenbach against the Miller Saw Trimmer Company. From a decree dismissing the bill on the ground of invalidity of the claims in suit, plaintiff appeals. Affirmed.

Murray & Zugelter, of Cincinnati, Ohio (Walter F. Murray, of Cincinnati, Ohio, of counsel), for appellant.

Brown & Critchlow, of Pittsburgh, Pa. (Jo. Baily Brown and Charles G. Cope, both of Pittsburgh, Pa., of counsel), for appellee.

Before WOOLLEY and DAVIS, Circuit Judges, and DICKINSON, District Judge.

WOOLLEY, Circuit Judge. This action is for infringement of the first two claims of Letters Patent No. 1,468,289 issued on September 18, 1923, to A. J. Eschenbach, the plaintiff, for a dryer for printing presses and is here on his appeal from a decree of the District Court dismissing the bill on the ground of invalidity of the claims in suit.

The invention, diagrammatically illustrated in connection with a platen press having an automatic feed and delivery, relates to printing presses of any type, cylinder and platen. Its objects are to save time and thereby cost in printing, to avoid smudging

23 F.(2d)—10

and off-setting of printed matter, to minimize fire risk, obviate overheating of press parts, especially the inking rolls, cool the ink and the inking rolls and economize in fuel or energy supplied the heater. The only claims of the patent with which we are concerned are those that provide means against smudging and off-setting and possibly against fire. A typical claim is as follows:

"In combination with means for printing sheets, a receptacle to receive the printed sheets from said means, and a carrier to carry the sheets from said means to said receptacle, a heater fixed over said receptacle above the path of the sheets carried by said carrier, to heat said sheets after said sheets are received by said receptacle and throughout the time of their occupancy thereof."

Under this claim the heater is of no particular design but, as indicated by the specification, may be in the form of a metallic hood in whose interior is a burner energized by gas or electricity from which heat radiates downwardly. The invention, if any, is not in the heater but in its association with the delivery mechanism of the press and particularly in its fixed position "over said receptacle (containing the pile of printed paper) above the path of the sheets carried by said carrier" to the receptacle. Accordingly, in the Patent Office and at the trial of this suit, the center of the controversy was not the heater but the *place* of the heater. The attorney for the patentee tersely announced to the court: "We are not claiming anything new in regard to heating. It is the place." Therefore, about the "place" of the heater the issue revolves here, and on the place in its primary and perhaps in a secondary sense, the issue of invention must be determined.

Three elements of the combination were old. A receptacle, or delivery table, for printed sheets was as old as the printing press itself. A carrier for moving the sheets from the printing plate or cylinder to the receptacle came into the art when mechanism for that purpose replaced the hand of the printer and also was old. A heater to dry the ink on freshly printed sheets and dry it enough to prevent "smudging" of the ink of one sheet by the next sheet when placed on it, or "off-setting" of the ink of one sheet onto the back of the next sheet delivered on top of it, likewise was old. Heaters of this type and for these purposes were used chiefly on cylinder presses, where, because of the high class of printing, smudging and off-setting had to be most carefully guarded against and where it was most likely to oc-

cur, owing to the greater percentage of heavily inked work done. Until a few years ago work on platen presses was of the cheaper class where smudging and off-setting had not to be so carefully guarded against and were not so likely to occur, owing to the smaller percentage of heavily inked printing and the slow rate of delivery by hand. In about 1915, printing press manufacturers began to turn out platen presses with automatic feed and delivery, resulting in better printing impressions, better inking and more rapid work of a finer grade. Thus heat-drying the printed sheets, which had long been adapted to cylinder presses, came into use upon platen presses. Eschenbach conceived his device in connection with the automatic delivery of a platen press and applied for a patent, covering its use on printing presses of all kinds. He had trouble in the Patent Office because of patent references which showed heaters positioned in various places on presses and he had trouble at the trial of this suit in the District Court because of other patents not cited as references which showed heaters in still other places. The variety of places in which heaters may be positioned on printing presses has always been and still is due to an ever present double problem with several sides: One, to avoid heating and thereby drying the ink on the ink plate and to avoid heating and thereby warping or melting the inking rolls consisting ordinarily of a composition of glycerin and glue; the other—a very complex problem—to heat and thereby dry the printed sheets, yet in a manner to permit absorption or penetration of the ink, as by blotting, and to avoid crystallizing or packing the ink, for in that condition it will easily rub off; and, still further, not to apply heat in a degree that it will tarnish the paper, destroy its fabric, or diminish its size, and particularly the latter because in order to obtain correct coloring and true lines in printing by several impressions the sheet must be precisely the same size for each impression.

We have studied all the patents and shall briefly refer to some of them in order rightly to determine the position of Eschenbach's device in the art, and, accordingly, to decide whether, in view of all that had gone before, it amounts to invention.

The patent to Janeway (No. 217,735) shows that as far back as 1879 the setting of ink on printed sheets by heat was understood. Passing by a long list of intermediate patents and coming to the two cited as references by the Patent Office, the first is the patent to Spurrier (No. 1,050,399, 1913)

which provides a reciprocating heater mounted on the reciprocating sheet carrier, containing electrically heated tubes "to deflect the heated air upon the pile of sheets on the delivery table and upon both surfaces of the sheet."

The patent to Cunningham (No. 1,381,-806, 1921) is for a heater disposed over the delivery pile of a platen press to dry the sheets and set the ink, but it is positioned below the path which the sheets follow from the press to the receptacle. The Patent Office, having found that it was old to place a *reciprocating* heater over the receptacle and that it was old to place a *fixed* heater over the pile of printed sheets where the sheets had been heated in transit by a heater located *below* their path of travel, rejected the applicant's claims but finally allowed those in suit, and, manifestly, to avoid the inventions of the references, limited the invention of the patent applied for to "a heater *fixed* over said receptacle *above* the path of the sheets." Obviously this was a narrow escape from the prior art, but it might have been justified by the representations of the applicant that in this slight difference of position reside great differences in utility. And on this, seemingly, the Patent Office allowed the claims.

Of the several patents considered at the trial we shall note only the one issued to Walter (No. 1,240,108, 1917). This patent provides an "overhead drier" similar in shape and identical in purpose with the one claimed by Eschenbach. It is "arranged to overlie the delivery mechanism of the press and to direct the heat and vapor downward against the sheets of paper." Elsewhere the patent states that: "The device is designed to be suspended over the delivery mechanism." Thus it is "fixed." The patent drawings show it is placed "above the path of the sheets." Thus it is "fixed * * * above" one of the elements of the claims of the patent in suit. The patent to Walter in fixing the heater "over the delivery mechanism," another element of the claims in suit, however, does not say whether "delivery mechanism" includes the receptacle. If it does, Walter anticipates Eschenbach.

[1] The trial court admitted testimony to the effect that the heater of the Walter patent in actual operation by its owner is positioned directly over the pile of printed sheets and was used in that place before Eschenbach applied for a patent. This testimony was not admitted to prove prior use (as that defense had not been pleaded) but to show the scope of the Walter patent and the state

of the prior art. The plaintiff resisted the admission of this testimony on the ground that when the state of an art is sought to be discovered from prior patents, nothing can be used except what the patents disclose on their face. Mohr v. Alliance Securities Co. (C. C. A.) 14 F.(2d) 799. However that may be, Walter placed his heater above what he called the "delivery mechanism" without saying what that term embraced. Delivery mechanism is a well known mechanism of the art and we think the admission of testimony by workers in the art as to the meaning of one of the art's instrumentalities was admissible. And evidently so thought the learned trial judge for he admitted testimony which conclusively showed that "delivery mechanism" includes the receptacle. This was testimony upon a fact almost but not quite obvious on a reading of the Walter patent.

Accepting the plaintiff's claim that the place of the heater is the essence of the invention, the defendant, by evidence that was not contradicted, proved that "over the receptacle" is not only the obvious place, but is the only place for a heater on a platen press with automatic delivery. On this showing we had come to the conclusion that Eschenbach, in selecting this place for his heater, had done nothing inventive and that the decree should be affirmed, when on a final reading of Eschenbach's brief our attention was arrested by an expression whose import had at first escaped us. It is as follows:

"However, there was in Eschenbach's thought of putting a heater directly over a pile of sheets, *one condition that the trade had considered to be insurmountable, namely, that the heat thus applied* would destroy the paper. The thing that the trade did not recognize and that was seen by Eschenbach, was that the intermittent placing of a cold sheet on top of the pile, by a carrier whose path was interposed between the heater and the receptacle, would prevent any deterioration of the sheets."

Clearly, if this be true, the issue of invention because of the place takes a new turn. If the difficulty which the art had in drying freshly printed sheets was not in finding the best of several places on a press for the heater but in its mistaken belief that the only place available was an operatively impossible place, the discovery and appropriation of that place not only as possible but as highly useful might be invention. In such case the place would not be obvious in the sense of the patent law. Courts have sustained patents for the discovery of un-

usual characteristics in an old place made available by old means, as where the means brings the characteristics of the place into action and thereby brings about a result which is new in that it is different from and better than anything that had been done before. Pyrene Mfg. Co. v. Boyce (C. C. A.) 292 F. 480; Boyce v. Morris Motors, Ltd., Reports of (British) Patents, Design and Trade-Mark Cases, No. 5 of Vol. XLIV, decided December 3, 1926.

With this law in mind we again read the patent and the testimony, this time in search for something which would support the claim made in Eschenbach's brief just quoted. In the patent we found, as before, the theory of overhead sheet-by-sheet drying and the maintenance of a through-and-through warm stack but no statement that drying in this manner "would prevent any deterioration of the sheets," or that the art thought that in this mode of drying there was involved the insurmountable obstacle of destroying the paper. In the testimony we found nothing said by the patentee, the only witness for the patent, to the effect that the intermittent placing of cold sheets on the top of the pile and their intermittent heating would prevent their deterioration and nothing said by him tending to prove that before his thought of placing the heater directly over the pile the trade had thought that heat thus applied would destroy the paper. One witness for the defendant, speaking as a practical printer, did say that if enough heat were applied to the sheets to permit of substantially immediate drying, which is the claimed achievement of the patented device, the ink would be crystallized and the paper destroyed in that it would become brittle and would crack when folded, but that statement was made not with reference to what the art had thought before Eschenbach's patent but in denial of what Eschenbach claimed his device would do. His claims of extraordinary results in finishing and turning out work were contradicted by this witness and other witnesses for the defendant, who, like the plaintiff, it is only fair to say, were interested. These claims of what the device would accomplish first appeared in representations made to the Patent Office by Eschenbach's patent attorney during the prosecution of his application for a patent and are in part as follows:

"Applicant actually dries sheets so they can *at once* have another impression run over the impression just made, as soon as a pile of sheets is taken from the press. Or they can *at once* be compressed in a paper cutter and trimmed. Applicant's heater enables a

multi-color job to be completed the same half day, instead of waiting until the next day for one color to dry before imprinting the next color. And it allows any job, one color or multi-color, to be trimmed, packed and delivered *just as soon as run off the press,* instead of waiting about a day for drying;" and that the printer can "take a pile of dried sheets and print over the impressions *at once";* that the heater will "allow the rerunning of a sheet, before trimming it, as soon as a bunch of these sheets has been taken from the press receptacle."

[2] Except in completing a multi-color job on the same day, the defendant's witnesses, experienced men in the printing trade, flatly denied that the Eschenbach heater will do any of these things. Yet, certainly, on these representations of Eschenbach's patent attorney the Patent Office was persuaded to allow the claims. But in this case the issue of results must be decided on the testimony of the witnesses. We do not question the veracity of any of them but accept the testimony of all in varying measure by making allowances for their interest in the litigation and their prejudice for and against the patented device, and find (without regard to whether the heater of the patent positioned in the only place operatively possible on a platen press is more effective than a reciprocating heater on a cylinder press) that the Eschenbach heater is useful but not in a new way nor to the degree and with the inventive characteristics claimed for it. Lovell Mfg. Co. v. Cary, 147 U. S. 623, 13 S. Ct. 472, 37 L. Ed. 307.

The conclusions of the District Court were right and its decree is

Affirmed.